389 So.2d 782 (1980)
Ruby ROBERTS et al., Plaintiff and Appellant,
v.
A. J. STEVENS, Defendant and Appellee.
No. 7637.
Court of Appeal of Louisiana, Third Circuit.
October 8, 1980.
*783 Mark H. Kramar, Leesville, for plaintiff and appellant.
F. Clay Tillman, Jr., Leesville, for defendant and appellee.
Before CULPEPPER, DOMENGEAUX and CUTRER, JJ.
CULPEPPER, Judge.
Plaintiffs bring this action seeking a variety of rights and remedies involving a small cemetery known as the "Smith Cemetery", in which they have relatives buried. Specifically, plaintiffs ask for: (1) A declaratory judgment recognizing the Smith Cemetery as a public cemetery and recognizing the right of the public to have access to the cemetery; (2) judicial determination of the boundaries of the cemetery; (3) injunctive relief restraining the defendant, A. J. Stevens, from interfering with plaintiffs' use of and access to the cemetery; and (4) damages in the amount of $5,000 for emotional distress and mental anguish caused as a result of the defendant's alterations to the cemetery. The trial court granted a declaratory judgment recognizing the Smith Cemetery as a public cemetery and ordered a survey of the area comprising the cemetery. Injunctive relief and damages for emotional distress and mental anguish were denied. From this judgment, plaintiffs appealed.
The Smith Cemetery is a small rectangular plot of land, approximately 30 feet by 46 feet in size, on a hill in a rural wooded area in Vernon Parish. For many years it served as the final resting place for several of plaintiffs' ancestors. Although the exact origin of the cemetery is uncertain, several tombstones date back to the early part of this century. The last burial was in about 1929.
Throughout the years, upkeep and maintenance of the cemetery were provided by plaintiffs and other members of their families. This maintenance included keeping up an old wire fence until a chain link fence was built in about 1965, raking leaves, picking up fallen limbs and clearing out weeds and other growth.
The wooded area surrounding the cemetery was subdivided into residential lots in the early 1970s. In 1974, the large lot on which the cemetery is presently located was purchased by the defendant. He built a home and landscaped his property. In an effort to make the cemetery conform more aesthetically with the home and landscaping, defendant, at his own expense, improved the appearance of the cemetery, which at the time was in a state of disrepair. The chain link fence was replaced by a redwood board fence. The cemetery was cleared of grass and dead limbs. A concrete border was placed around the central area used for graves, and tar paper covered by sawdust and pine bark was used to prevent weeds and grass from growing over the graves. Also, concrete borders, enclosing spaces for flowers and shrubs, were placed along each side of the central grave area.
Stevens placed markers on those graves that were still identifiable. There is some dispute in the testimony as to whether there were any standing tombstones at the time the defendant initiated these changes. Defendant testified that the two remaining tombstones had deteriorated and fallen due to fire ant infestations and several hard freezes during the past few years.
Shortly after these changes were made, plaintiffs discovered them. Several of the plaintiffs testified that following these changes the area was no longer recognizable as a cemetery. They preferred their cemetery in its original state, despite whatever good intentions defendant may have had.
The trial court, following our decision in Vidrine v. Vidrine, 225 So.2d 691 (La.App. 3rd Cir. 1969) held that ownership of the land on which the cemetery is located is vested in the defendant. However, the court ordered the defendant to move the outer board fence which he had erected to *784 conform with the findings of the surveyor. The judgment also provides:
"5. The defendant, A. J. Stevens, is recognized to be the owner of the land on which the Cemetery is located subject to the covenant that binds the owner in the following ways:
(1) He cannot remove or disturb any grave.
(2) Relatives and friends have unrestricted rights to visit and care for the graves.
(3) Property included in the cemetery cannot be used by the owner for any purpose inconsistent with cemetery purposes.
(4) The owner cannot reduce the size of the lands set apart as a cemetery.
"6. The defendant, A. J. Stevens, the owner retains ownership of the land and he may: make and enforce regulations as to where burial plots will be placed, charge for lots and this carries with it the power to prevent any further burials on the cemetery plot and to prevent any further enlargement of the cemetery."
Jurisprudence has established that the reservation of a tract of land for use by the public as a cemetery and its continued use by the general public as a burial ground is legally sufficient to constitute dedication of the property for public use. Locke v. Lester, 78 So.2d 14 (La.App. 2d Cir. 1955); Humphreys v. Bennett Oil Corporation, 195 La. 531, 197 So. 222 (1940). When property has been informally dedicated, ownership of the land remains with the record owner, subject to an irrevocable dedication for public use. A. Yiannopoulos, Property, II La. Civ.L. Treatise (1980), Sec. 65 at 195.[1] Here, the Smith Cemetery has been used by several families for over eighty years. Clearly, the cemetery has been informally dedicated for public use as a place for burials.
The exact nature of the rights acquired in the property by virtue of the dedication have not been clearly defined by jurisprudence. Earlier cases described this right as a "species of interests or form of title . . . not within the recognition of the Code." See Choppin v. Dauphin, 48 La.Ann. 1217, 20 So. 681, (La.1896),[2] and Humphreys v. Bennett Oil Corporation, supra. In Vidrine, the court declared that the dedication was "in the nature of an irrevocable covenant running with the land" and "a real right, not a servitude or usufruct, but an implied contractual relationship that binds the owner irrevocably." Vidrine v. Vidrine, 225 So.2d 691 at 697. This right has also been described in civilian terms as a judicially created real right in the nature of a servitude.[3]
Prior cases have recognized the right of the descendants and near relatives of those interred in such cemeteries to sue for damages for the profanation or desecration of the sacred grounds. Thomas v. Mobley, 118 So.2d 476 (La.App. 1st Cir. 1960); Humphreys v. Bennett Oil Corporation, supra. However, we agree with the trial court that in the present case the defendant's acts did not amount to a desecration of the cemetery grounds. Although defendant may have substantially changed the appearance of the cemetery, the record clearly indicates that defendant took precautions not to disturb any of the graves and at all times respected the sanctity of the area.
The result in Thomas v. Mobley, supra, lends support to our conclusion here. There, the defendant, with similar intentions of improving the appearance of the cemetery located on his property, had the *785 area cleared by a tractor. Prior to the clearing, the defendant mapped off the location of the graves and removed the headstones pending the clearing. The court held the mere act of using machinery to clear the cemetery did not constitute desecration, provided care was taken to preserve the area. In the present case, defendant took the utmost care not to disturb the area. On the contrary, he improved its appearance.
In his written reasons, the trial judge stated that the question of future burials was not at issue due to an earlier agreement between defendant and his vendor that there would be no new burials in the cemetery. Defendant, under cross-examination, made it clear that he is opposed to any future burials. Plaintiffs contend the prevention of future burials violates their rights of use and access to the cemetery. We agree. In Vidrine, this Court held that the owner may make and enforce regulations as to how burials shall be made so long as the regulations are consistent with the manner in which burials have been accomplished in the past. This, however, does not give the owner the power to prohibit future burials altogether. Since, as previously noted, the dedication is in the nature of a servitude and created real rights on the land, any personal agreement between the purchaser and the seller would have no effect on the plaintiffs. The ruling of the trial court insofar as it prohibits future burials must be modified accordingly.
Plaintiffs next contend the placement of the concrete borders unlawfully reduced the area available for burial spaces. The plat by the court-appointed surveyor shows the entire cemetery is rectangular in shape and approximately 30 feet wide by 45 feet in depth. It fronts on a public street, Huckleberry Drive. As stated above, defendant erected a concrete border, approximately 13½ feet in width by 38½ feet in depth, enclosing the central area where the existing graves are actually located. The plat shows the existing foot stones marking the graves found in this central area. Along each side of this central area where the graves are located, defendant constructed a concrete border enclosing an area, approximately 5 feet in width and 38½ feet in length, for flowers and shrubs. Plaintiffs contend the construction of these concrete borders around the beds for flowers and shrubs has unlawfully reduced the area available for gravesites.
The trial judge did not expressly discuss this issue. We have carefully studied the record and find that the erection of these concrete borders around the flowerbeds does not interfere with the space which had been used in the past for gravesites. Moreover, the beds are consistent with the use of the property for cemetery purposes. Thus, we find no merit in this argument.
The plaintiffs' final argument is that the trial court erred in assessing court costs 60% to the plaintiffs and 40% to the defendant. According to LSA-C.C.P. Article 1920, the trial court is free to assess costs as it may consider equitable. The ratio determined by the trial court in the present case cannot be considered inequitable or unduly harsh.
For the reasons assigned, the judgment appealed is amended to delete therefrom the provision in paragraph No. 6 that defendant has the power to prevent any future burials in the cemetery. Otherwise, the judgment is affirmed at plaintiffs' costs.
AFFIRMED, AS AMENDED.
NOTES
[1] Although plaintiffs do not plead such a claim, we note that in 1973, defendants vendor, W-K-N Real Estate, Inc., recorded a plat of the subdivision, known as Hickory Hill Estates, containing a reference to the Smith Cemetery. It could be argued that the mere recordation of the plat may have been sufficient to constitute a formal or statutory dedication of the cemetery under LSA-R.S. 33:5051 and R.S. 33:31, vesting title rather than only a servitude to the public. Parish of Jefferson v. Doody, 247 La. 839, 174 So.2d 798 (La. 1965). See also Pioneer Production Corporation v. Seagraves, 340 So.2d 270 (La. 1976). We have found no cases applying these statutes to the dedication of cemeteries. See 16 L.L.R. 582, 584 (1956).
[2] Also entitled Choppin v. Labranche.
[3] See Judge Tate's dissent at 225 So.2d 699.