| ASSOCIATION OF | * | NO. 2024-CA-0044 |
| CEMETERY TOUR GUIDES | | |
| AND COMPANIES L3C | * | |
| | | COURT OF APPEAL |
| VERSUS | * | |
| | | FOURTH CIRCUIT |
| NEW ORLEANS | * | |
| ARCHDIOCESAN | | STATE OF LOUISIANA |
| CEMETERIES | * * * * * * * | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2023-01274, DIVISION "M"
Honorable Paulette R. Irons, Judge
* * * * * *
**Judge Rachael D. Johnson**
* * * * * *

(Court composed of Judge Daniel L. Dysart, Judge Rosemary Ledet, Judge
Rachael D. Johnson)

David W. Nance
DAVID W. NANCE LAW FIRM, LLC
3912 Constance Street
New Orleans, LA 70115

      COUNSEL FOR PLAINTIFF/APPELLANT

Brian J. Capitelli
Thomas C. Wicker, IV
CAPITELLI & WICKER
1100 Poydras Street, Suite 2950
New Orleans, LA 70163

      COUNSEL FOR DEFENDANT/APPELLEE

      **AFFIRMED**
      **SEPTEMBER 4, 2024**

Appellant, the Association of Cemetery Tour Guides and Companies LSC ("the Association"), seeks review of the July 20, 2023 district court judgment, as amended on June 6, 2024, granting Appellee, the New Orleans Archdiocesan Cemeteries' ("NOAC"), peremptory exceptions of *res judicata* and no right and no cause of action, and dismissing the Association's claims for a possessory action, injunctive relief and a declaratory judgment. Pursuant to our *de novo* review of the facts and applicable law, we affirm the district court's grant of NOAC's exception of no right of action and its dismissal of the Association's claim for possession. Furthermore, we affirm the district court's grant of NOAC's exception of no cause of action and its dismissal of the Associations' claims for a declaratory judgment and injunctive relief.

## FACTS AND PROCEDURAL HISTORY

Prior to 2015, the St. Louis Cemeteries were open for public access, but in 2015, NOAC restricted access to St. Louis No. 1 to families of those interred there and tour guides and/or companies accompanying paying tourists on a guided tour. This practice was suspended in 2020, when due to the COVID-19 pandemic,

NOAC closed the St. Louis Cemeteries to everyone but family members. In the fall of 2021, NOAC re-opened St. Louis Number 1 for tours exclusively operated by NOAC's tour contractee, Cemetery Tours NOLA, LLC.

The instant matter is the last in a trio of lawsuits filed by local tour guides licensed by the City of New Orleans seeking to regain access to two NOAC-owned and operated cemeteries, St. Louis No. 1 and St. Louis No. 2 (hereinafter collectively referred to as "the St. Louis Cemeteries"), following their closure by the NOAC due to the COVID-19 pandemic. This matter is the second suit brought by the Association.

The Association's first lawsuit was *Witches Brew Tours, LLC v. New Orleans Archdiocesan Cemeteries*, *et al*., 21-2051, United States District Court for the Eastern District of Louisiana ("Eastern District"). The Association replaced the initial plaintiff, Witches Brew Tours, LLC., in asserting claims under the federal antitrust acts, Louisiana competition law and property law, and sought a temporary restraining order and a preliminary injunction, in addition to other relief. The Eastern District denied the temporary restraining order in November 2021. The Association later filed an amended complaint and then an amended motion for a preliminary injunction. The Eastern District denied the motion for injunctive relief. The Association filed an interlocutory appeal to the United States Fifth Circuit Court of Appeal ("the Fifth Circuit").

While its appeal was pending, the Association filed an additional petition in the Eastern District, which it subsequently amended. The Eastern District later dismissed the Association's claims on NOAC's motion; denied the Association's motion to amend with the second amended petition; found the Association failed to state claims under the Sherman Act and declined jurisdiction over the remaining

2

state law possessory action claims. The Association appealed this decision, its second appeal, to the Fifth Circuit. On January 3, 2023, the Fifth Circuit dismissed the first appeal as moot and affirmed the Eastern District's August 2022 judgment. After the Fifth Circuit denied rehearing, the Association did not appeal the Fifth Circuit's decision to the United States Supreme Court.[1]

In the instant matter, in February 2023, the Association filed a Petition for Possession, Injunctive Relief, and Declaratory Judgment, seeking to possess a real right, or alternatively a possessory action, as well as preliminary and permanent injunctive relief. The Association set forth in its Petition several allegations forming the basis of its claims to wit: NOAC, in 2015, initially ceased allowing "free and reasonable access to" St. Louis Cemetery No. 1 and "began requiring and sharing in the revenue from mandatory entry and tour fees;" NOAC closed the St. Louis Cemeteries to the public during the COVID-19 pandemic; since the re-opening the St. Louis Cemeteries to the public, the NOAC now seeks to increase its tourism revenue stream through fixed prices and restricting access to the St. Louis Cemeteries; the NOAC's restrictions are causing concrete harm to Association members, who as interested members of the general public, have a right to free and reasonable access the St. Louis Cemeteries, as they are public cemeteries.

The Association pleads that NOAC exceeded its authority as a cemetery authority and violated real rights of the general public to access public cemeteries,

---

[1] The parties note a separate plaintiff, tour guide Muriel Lang, filed a second lawsuit against the NOAC in November 2021 in Civil District Court, *Muriel Lang d.b.a. Tours on Demand v. New Orleans Archdiocesan Cemeteries, et al.*, No. 2021-09351. Ms. Lang purportedly sought a temporary restraining order and preliminary and permanent injunctive relief. This matter is unrelated to the instant suit as the Association was not a party.

under Louisiana Revised Statutes, Title 8 by keeping St. Louis No. 2 closed and limiting access to St. Louis No. 1 to certain family members. It further contends that NOAC is forcing the general public as well as unrecognized family members and friends to take a paid tour with the NOAC's contracted company in order to visit St. Louis No. 1. In light of the foregoing, the Association states that NOAC has legally disturbed and deprived the general public of its right to free and reasonable access to the St. Louis Cemeteries. The Association avers that a large portion of its membership has been forced to close their businesses or will soon have to close their tour businesses as a result of the NOAC not reopening for tours as it once had promised post-pandemic.

The Association further pleads that it was formed in 2021, and its membership is comprised of tour guides and companies, who are licensed by the City of New Orleans. The Association avers that it has a right to bring a possessory action to protect its real rights in public cemeteries as all of its members "reside within the New Orleans metropolitan area and thus qualify as the general public." Moreover, the Association pleads that some of its members are friends and family members of the deceased interred in the St. Louis Cemeteries. It avers that it seeks injunctive relief because its members are irreparably harmed by NOAC's arbitrary decision to keep the St. Louis Cemeteries closed "beyond any state or city mandated pandemic closure and threatened with additional irreparable harm when NOAC began requiring a fee for its tour to enter No. 1, while No. 2 closed."

In response, NOAC filed exceptions of no cause and no right of action as to all three of the Association's claims as well as an exception of *res judicata* as to the Association's claim for injunctive relief.

Thereafter, the Association filed its First Amended Petition for Possession, Injunctive Relief and Declaratory Judgment, pleading that under La. Code Civ. Proc. arts. 3658 and 3663[2], its members have standing to bring this possessory action, which it avers it timely brought, "against NOAC under statutory law that expressly provides for declaratory and injunctive relief." It avers that it can satisfy the procedural and substantive requirements for seeking injunctive relief in addition to having standing to bring a possessory action. The Association further pleads that its members, "on behalf of themselves as part of the general public, seek to recover their real right to free and reasonable access" to the St. Louis Cemeteries. The Association pleads that it seeks the enforcement of this real right in this action and to "stop NOAC's unlawful seizure of the public's real right to free and reasonable access to public cemeteries." The Association avers that the St. Louis Cemeteries are public religious cemeteries and that NOAC owns the land underneath these public cemeteries. It re-asserts that the St. Louis Cemeteries made up 90% of the cemetery tour business and its members have individually been harmed by losing revenue as a result of being excluded from the St. Louis Cemeteries.

The district court held a contradictory hearing on NOAC's exceptions on July 13, 2023. At the conclusion of the hearing, the district court granted all three exceptions. The Court later executed a July 20, 2023 judgment. Thereafter, the Association moved for a new trial; however, the district court denied its motion. This timely appeal followed.

---

[2] We note that neither of these articles pertain to seeking a declaratory judgment, rather they pertain to seeking possessory and injunctive relief.

After the appeal was lodged, this Court issued a May 22, 2024 order to the district court, noting that the July 20, 2023 district court judgment lacked the requisite decretal language and remanded this matter with instructions to render a judgment addressing the dismissal of the Association's claims. The district court complied with the order, rendering an amended judgment that dismissed the Association's claims with prejudice on June 6, 2024.

## ASSIGNMENTS OF ERROR

The Association raises five assignments of error, alleging that the district court erred by: granting NOAC's exception of no right of action; granting NOAC's exception of *res judicata;* granting NOAC's exceptions of no cause of action; failing to take judicial notice of law and undisputed adjudicative facts; and failing to grant the Association's requested relief. The crux of this matter, however, is whether the district court erred in granting NOAC's exceptions. Thus, we begin with a review of the district court's grant of the NOAC's exceptions of no right and no cause of action.

### Exceptions of No Right and No Cause of Action

"Except as otherwise provided by law, an action can be brought only by a person having a real and actual interest which he asserts." La. Code Civ. Proc. art. 681. "A party has an actionable right, and consequently standing, if it can be said that the party has a legally protectable and tangible stake in the litigation." *First Bank & Tr. v. Duwell*, 10-481, p. 5 (La. App. 5 Cir. 12/14/10), 57 So. 3d 1076, 1078.

A plaintiff's right to file suit may be challenged in a peremptory exception of no right of action, alleging that the plaintiff does not have the required interest to file suit. *Johnson v. Orleans Par. Sch. Bd.*, 22-0731, p. 10 (La. App. 4 Cir.

6

3/15/23), 359 So. 3d 592, 600; La. Code Civ. Proc. art. 927. The burden of proof is on the exceptor. *Id*. A peremptory exception serves "to have the plaintiff's action declared legally nonexistent, or barred by effect of law, and hence this exception tends to dismiss or defeat the action." La. Code Civ. Proc. art. 923. "A proper analysis of a peremptory exception of no right of action requires a court to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit." *Mayehaul Trucking, LLC v. Sasol Chemicals, LLC*, 21-797, p. 6 (La. App. 3 Cir. 11/9/22), 353 So. 3d 243, 249-50 (citations omitted).

In contrast, a peremptory exception of no cause of action under La. Code Civ. Proc. art. 927 A(5) questions whether the law extends a remedy against a defendant to anyone under the factual allegations of a petition." *Henderson v. State Farm Mut. Auto. Ins. Co.*, 21-0654, p. 4 (La. App. 4 Cir. 12/17/21), 335 So. 3d 349, 353 (citation omitted). "A cause of action, for purposes of the peremptory exception, is defined as the operative facts that give rise to the plaintiff's right to judicially assert the action against the defendant." *Warren v. HDI Glob. Ins. Co.*, 21-570, p. 4 (La. App. 5 Cir. 5/16/22), 341 So. 3d 1249, 1253-54, *writ denied*, 22-00938 (La. 11/1/22), 349 So. 3d 10, and *writ denied*, 22-01002 (La. 11/1/22), 349 So. 3d 5 (citation omitted). "An exception of no cause of action tests 'the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading.' " *Green v. Garcia-Victor*, 17-0695, p. 4 (La. App. 4 Cir. 5/16/18), (quoting *Moreno v. Entergy Corp.*, 10-2281, p. 3 (La. 2/18/11), 62 So. 3d 704, 706). "No evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action." La. Code Civ. Proc. art. 931. "For the purpose of determining the issues raised by the

exception of no cause of action, all facts pleaded in the petition must be accepted as true." *Warren,* 21-570, p. 4, 341 So. 3d at 1254.

Appellate courts review rulings on exceptions of no right and no cause of action use the *de novo* standard of review because both exceptions present a question of law. *Tickle v. Ballay*, 18-0408, p. 4 (La. App. 4 Cir. 11/14/18), 259 So. 3d 435, 438; *Willis v. City of New Orleans*, 14-0098, p. 5 (La. App. 4 Cir. 6/18/14), 143 So. 3d 1232, 1236.

### *Exception of No Right of Action: Possessory Action*

In its exception, NOAC notes preliminarily that the Association was only formed to sue NOAC and further that the Association's membership and mission are unknown to the general public. NOAC further argues that the Association is precluded from seeking relief through a possessory action under La. Code Civ. Proc. art. 3654, *et seq.*, because the Association's action is for access to the St. Louis Cemeteries, not for possession. Additionally, it contends that the Association has never possessed or owned the St. Louis Cemeteries nor does it seek ownership in the instant matter. NOAC asserts that the purpose of a possessory action "is to protect the possessor's presumption of ownership as acquisitive prescription accrues." *Todd v. State Dept, of Natural Resources*, 456 So.2d 1340 (La. 1983). NOAC avers that the Association does not belong to the category of plaintiffs who would be entitled to claim possession of a real right in the St. Louis Cemeteries, under arts. 3654, et. seq. We agree.

As aforementioned, the Association pleads that it has standing to sue as an organization comprised of municipally-licensed tour guides and tour companies that following the re-opening of the St. Louis Cemeteries after the COVID-19

8

pandemic, have been banned by the NOAC from visiting and conducting tours in the St. Louis Cemeteries. They allege that 90% of cemetery tours take place in the St. Louis Cemeteries. The Association pleads that it brings this action on behalf of its members—including some relatives and/or friends of those buried in the St. Louis Cemeteries— as well as the general public of which its members are apart. The Association further avers that some of its members, who are relatives and friends of the deceased interred in the St. Louis Cemeteries, are currently prohibited from visiting the St. Louis Cemeteries under NOAC's policies.

The Association pleads that both its members and the general public have a real right to free and reasonable access the St. Louis Cemeteries. NOAC, it contends, has seized and infringed upon this real right by barring their access since re-opening post-pandemic, unless persons who are not recognized by the NOAC pay for a NOAC-sanctioned tour. The Association further pleads its members have lost out on substantial tourism revenue and will continue to do so as a result of NOAC's current restrictions for access to the St. Louis Cemeteries. The Association avers that it seeks to enforce its real right in its possessory action is for access to the St. Louis Cemeteries and in conjunction therewith, seeks a declaratory judgment recognizing its real right as well as injunctive relief to enjoin NOAC from preventing its members and the general public from accessing the St. Louis Cemeteries. We find, for the reasons more fully explained below, that Louisiana jurisprudence does not recognize a right of access or to visit the St. Louis Cemeteries for nonrelatives and/or non-friends of the deceased interred there.

The Association's assertion of standing is premised on its pleading that the general public has a real right to access cemeteries because they are publicly

dedicated properties. The Louisiana Cemetery Act, La. Rev. Stat. 8:1, *et seq.*, as amended and reenacted in 1974 by Act 417 of the Louisiana Legislature, governs Louisiana cemeteries. *Westlawn Cemeteries, L.L.C. v. Louisiana Cemetery Bd.*, 21-01414, p. 4 (La. 3/25/22), 339 So. 3d 548, 554. Under Title 8, the St. Louis Cemeteries are "religious cemeteries," as they are "owned, operated, controlled, or managed by a recognized church, religious society, association, or denomination, or by a cemetery authority or a corporation administering or through which is administered the temporalities of any recognized church, religious society, association, or denomination." La. Rev. Stat. 8:1 (41).

NOAC is a corporation engaged in cemetery business for the Archdiocese of New Orleans' cemeteries, including the St. Louis Cemeteries under La. Rev. Stat. 8:201. NOAC is also a "cemetery authority" under Title 8 as it is a corporation "owning, operating, controlling, or managing a cemetery or holding lands within this state for interment purposes." La. Rev. Stat. 8:1. Dedication of land in Louisiana "to cemetery purposes" is statutorily recognized in Title 8, which provides that a dedication "shall be considered to be in respect for the dead, a provision for the interment of human remains, and a duty to and for the benefit of the general public." La. Rev. Stat. 8:305. Once a tract of land is dedicated for burial purposes, it assumes a sacred quality. *Riverie v. Mills*, 481 So. 2d 1050, 1052 (La. App. 1st Cir. 1985).

Precipitating the enactment of the Louisiana Cemetery Act were cases brought by family members of those interred in Louisiana cemeteries, both public and historic, defining the parameters of dedication of property as a cemetery, such as *Humphreys v. Bennett Oil Corp.,* 195 La. 531, 197 So. 222 (1940); and *Vidrine v. Vidrine,* 225 So. 2d 691 (La. App. 3d Cir.1969).

10

In *Humphreys*, plaintiffs, who were relatives of those interred in the Evangeline Cemetery in Acadia Parish, sued an oil corporation for damages, alleging that they suffered from mental anguish, pain, worry, humiliation and nervous and physical shock, after the defendants trespassed on and destroyed the cemetery grounds to drill oil wells. 197 So. at 223. The defendants averred that the cemetery was never dedicated to the public for church and cemetery purposes, but that defendants were granted a mineral lease by the heirs and descendants of the original owner of the land as well as the religious organization that had been granted right of occupancy for church and cemetery purposes. *Id*., 197 So.at 223-24. The original owner of the one-acre tract, which was used as a cemetery, later dedicated the land by her "for cemetery and church purposes." *Id*., 197 So. at 225. The owner later executed another instrument on behalf of herself and the trustees of her church delivering the cemetery to another church again "for cemetery and church purposes." *Id.*

Following a jury trial, the plaintiffs were awarded damages, which the defendants appealed to the Louisiana Supreme Court. The *Humpreys* Court affirmed the jury's determination that the cemetery was exploited by the defendants' drilling operations and desecrated. *Id*. at. 228-30. The Louisiana Supreme Court determined that the original owner had retained title to the ground while dedicating the property for the specific purposes as a community cemetery, which it was continuously used as until the defendants began their drilling operations. *Id*. The *Humphreys* Court found, therefore, that the dedication of the land for cemetery purposes was complete, and further that the plaintiffs "relied in good faith on the dedication made by the owners of the land and buried their relatives there." The Louisiana Supreme Court determined that the plaintiffs

"acquired rights therein which could not be divested by any subsequent disposition made of the property either by the fee owners or the churches, or both." *Id.*, 197 So. at 227. Therefore, the land could not be used "for any purpose inconsistent with the use for which it was dedicated." *Id.*

In *Vidrine*, the Third Circuit determined what the respective rights of the parties were arising from dedication of land to cemetery use. The *Vidrine* Court specifically held that when land is dedicated to the public for use as a cemetery, the the dedication is in the nature of an irrevocable covenant running with the land. *Id.*, 225 So. 2d at 697. Additionally, it held that the dedication is a real right, not a servitude or usufruct, but an implied contractual relationship binding the owner of land dedicated as a cemetery irrevocably to: (1) not removing or disturbing any grave; (2) relatives and friends have unrestricted rights to visit and care for the graves; (3) property included in the cemetery cannot be used by the owner for any purpose inconsistent with cemetery purposes; and (4) the owner cannot reduce the size of lands set apart as a cemetery. *Id.* The owner, nevertheless, retains ownership to the land. *Id.*

The holdings of *Vidrine* have been applied following the enactment of the Louisiana Cemetery Act, evidencing the applicability of the Third Circuit's holdings to current actions involving cemeteries. *See Riverie*, *supra (*applying *Vidrine*'s holdings in a cemetery boundary dispute); *In re St. James Methodist Church of Hahnville*, 95-410, p. 6 (La. App. 5 Cir. 12/27/95), 666 So. 2d 1206, 1209 (holding that *Vidrine* "correctly sets forth the cemetery owner's right to regulate and that the owner of a cemetery has the right to make and enforce regulations pertaining to the ownership of its property"); *Roberts v. Stevens*, 389 So. 2d 782, 784-785 (La. App. 3rd Cir. 1980) (reiterating the application of

*Vidrine*'s four requirements upon a cemetery owner in who attempted to restrict future burials of plaintiffs who had relatives interred in the owner's cemetery); *See also* 2 La. Prac. Real Est. § 20:51, <u>Dedication of cemetery property</u> (2d ed. 2023).

We find that *Vidrine*'s holding as to the irrevocable rights by which a cemetery owner is bound makes clear that where there is a dedication of land to the public for a cemetery, including privately owned cemeteries, it is only the relatives and friends of persons buried there that have a recognized right to visit or to access the cemetery. The holdings of *Humphreys* and *Vidrine* reflect that the sanctity of cemeteries as the final resting place of those interred there and those bonded to those persons by blood and/or the mutual affinity of friendship have a recognized right to visit and care for the graves of the deceased. Therefore, the right to access or visit derives from a real connection to the deceased, a connection that is not recognized for strangers and acquaintances, although some cemeteries, cemetery authorities and/or cemetery corporations may permit their access.

Additionally, as noted above, NOAC, as a cemetery authority and religious cemetery, under Title 8 has the statutory right to implement and enforce restrictions limiting cemetery access those members of the general public who are not family and friends of the deceased interred in the St. Louis Cemeteries.

We further note that because access to the St. Louis Cemeteries is limited to family and friends of the deceased buried there that the Association lacks associational standing to bring a possessory action. "Louisiana has adopted the U.S. Supreme Court's three-part test articulated in *Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), to determine whether an association has standing to bring suit on behalf of its members." *Indus. Pipe, Inc. v. Plaquemines Par. Council*, 12-1348, p. 7 (La. App.

4 Cir. 9/14/12), 100 So. 3d 896, 900. The three-part *Hunt* test asks: 1) whether the members would otherwise be able to bring suit in their own right; 2) whether the interests the Association wishes to protect are pertinent to its purpose; and 3) whether neither the claim asserted by the association nor the relief sought requires the participation of individual members. *Id.*

In the instant matter, the Association, in its original and amended petitions, pleads that of its 76 members, 13 members are relatives of persons buried in the cemeteries and 33 members are friends of persons buried in the cemeteries.[3] Therefore, on the face of the petition, the Association cannot satisfy the first prong of the *Hunt* test. All of its members would not otherwise have the right to file suit seeking a possessory action or the enforcement of a real right individually because they are not all relatives and/or friends of the deceased interred in the St. Louis Cemeteries. Having found that the Association is unable to satisfy the first *Hunt* factor, we need not consider the remaining two *Hunt* factors. The Association does not have the associational standing to proceed with any of its claims solely on behalf of its members who would have a right of action against the NOAC.

Moreover, for the same reasons that the Association lacks standing to proceed on behalf of its members, it cannot seek relief on behalf of the greater public, who would also not all fall into the categories of family and friends. "An action can only be brought by a person having a real and actual interest which he asserts." La. Code Civ. Proc. art. 681. Therefore, pursuant to our *de novo* review, we find that the district court did not err in granting NOAC's exception of no right

---

[3] Both of the Association's petitions plead generally that all of the Association's members "assert that they are friends of everyone interred" in the cemeteries because the members "know much more about the individuals interred there as well as the burial customs practiced and architectural styles exemplified there that more state residents." However, the petitions later specified exactly how many of its members were family and friends of some of the deceased persons buried in the cemeteries.

of action and dismissing the Associations' claim for a possessory action. Having upheld the district court's dismissal of the Association's possessory cause of action obviates any discussion of NOAC's exception of no cause of action as to the Association's possessory claim. We review below NOAC's exception of no cause of action as to the Association's remaining claims.

***Exception of No Cause of Action: Declaratory Judgment and Injunctive Relief***

The Association's remaining claims for a declaratory judgment and injunctive relief are ancillary to and interrelated with the Association's petition for a possession, because all three claims are brought under La. Code Civ. Proc. art. 3654, *et seq*., and are based on the Association's pleading that it has a real right to access the St. Louis Cemeteries because they are public cemeteries. We have established above that no such real right exists.[4] Moreover, the St. Louis Cemeteries are private religious cemeteries under Title 8, as discussed above, and the Louisiana Civil Code art. 453, which provides that private things "are owned by individuals, other private persons, and by the state or its political subdivisions in their capacity as private persons." La. Civ. Code arts. 453. Here the St. Louis Cemeteries are owned by the New Orleans Archdiocesan Cemeteries.

The Association asserted in its original and amended petition that it seeks a declaratory judgment and injunctive relief pursuant to statutory law applicable to possessory actions. Regarding seeking a declaratory judgment, the Association's original petition cursorily pleads that it is seeking a declaratory judgment without additional details. The Association pleads in its amended petition that pursuant to La. Civ. Code articles 3654 and 3663[5], it seeks a declaratory judgment in

---

[4] Because NOAC's exception of no right of action solely addressed the Association's possessory action, we proceed to discuss NOAC's exception of no cause of action.

conjunction with its petition for a possessory action. It also states in its prayer for relief that it seeks:

1. That the Court adjudge, declare, and decree as follows:

    a. NOAC has exceeded its authority as a cemetery authority and violated the real rights of the general public to visit and use public cemeteries, pursuant to the Civil Code; Revised Statute Title 8 and Louisiana primary law of custom stretching back over two centuries, by the following conduct:

        i. placing unreasonable access and use restrictions on relations of those interred in Nos. 1 and 2;

---

[5] La. Code Civ. Proc. art. 3654, entitled *Proof of title in action for declaratory judgment, concursus, expropriation, or similar proceeding,* provides:

> When the issue of ownership of immovable property or of a real right therein is presented in an action for a declaratory judgment, or in a concursus, expropriation, or similar proceeding, or when the issue of the ownership of funds that are deposited in the registry of the court and that belong to the owner of the immovable property or of the real right therein is so presented, the court shall render judgment as follows:
>
> > (1) If the party who would be entitled to the possession of the immovable property or real right therein in a possessory action has been in possession for one year after having commenced possession in good faith and with just title or has been in possession for ten years, the court shall render judgment in favor of that party, unless the adverse party proves that he would be entitled to a judgment recognizing his ownership in a petitory action under Article 3653(A)(1).
> >
> > (2) In all other cases, the court shall render judgment in favor of the party who proves better title to the immovable property or real right therein.

La. Code Civ. Proc. art. 3663, entitled *Sequestration; injunctive relief,* provides in pertinent part that in possessory actions, parties may seek injunctive relief:

> Injunctive relief, under the applicable provisions of Chapter 2 of Title I of Book VII, to protect or restore possession of immovable property or of a real right therein, is available to:
>
> > (1) A plaintiff in a possessory action, during the pendency thereof; and
> > (2) A person who is disturbed in the possession which he and his ancestors in title have had for more than a year of immovable property or of a real right therein of which he claims the ownership, the possession, or the enjoyment.

16

ii.  excluding the general public entirely from No. 2, except those able to convince NOAC of their relation to someone interred in No. 2;

iii.  excluding the nonpaying general public from No. 1, including friends and admirers of those interred therein as well as tour guides and companies licensed by the City of New Orleans to conduct tours in public spaces in the city;

iv.  requiring payment, to enter die public cemetery No. 1, from anyone unable to convince NOAC that they are a relation of someone interred in Nos. 1; and

v.  placing unreasonable use and access restrictions for No. 1 on the general public, including relations, friends, and admirers of those interred, as well as tour guides and companies licensed by the City of New Orleans to conduct tours in public spaces in the city.

Louisiana law, as explained above, does not recognize a real right that the Association's members or the general public have to visit or have access to the St. Louis Cemeteries, so the Association is not entitled to a declaratory judgment to this effect. Similarly, the Association's petition for injunctive relief does not "present a justiciable controversy" due to its lack of a real right to access the St. Louis Cemeteries. *Howard v. Administrators of Tulane Educ. Fund*, 07-2224, pp. 7-8 (La. 7/1/08), 986 So. 2d 47, 54 (quoting *Terrebonne Parish Police Jury v. Matherne*, 405 So. 2d 314, 318 (La.1981)). The Association, on the face of its petition, fails to state a cause of action to seek a declaratory judgment or injunctive relief for access to the St. Louis Cemeteries, which here are controlled by a cemetery authority, NOAC, under Louisiana Revised Statutes, Title 8, because Louisiana law affords no such remedy.

The Louisiana Code of Civil Procedure provides that "when the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment

within the delay allowed by the court." La. Code Civ. Proc. art. 934. Nevertheless, if the grounds of the objection raised through the exception cannot be so removed, "the action, claim, demand, issue, or theory shall be dismissed." *Id*. The Association's petition and amended petition make clear that the grounds of NOAC's objections raised through its exceptions of no right and no cause of action cannot be cured by an additional amendment because the Association's current membership and the general public do not all fall into the two required categories required for entry into the St. Louis Cemeteries and the Association lacks associational standing.

Finally, as noted above, a peremptory exception serves to have a plaintiff's action declared legally nonexistent or barred by effect of law and, therefore, if granted, tends to dismiss the action under La. Code. Civ. Proc. art. 923. Our affirmation of the granting of the exceptions of no right of action as to the Association's possessory claim and exception of no cause of action at to the Association's claims for a declaratory judgment and injunctive relief dismisses all three of the Association's claims, regardless of how this Court might resolve the Association's remaining assignments of error. Therefore, we pretermit any discussion of the Association's remaining assignments of error because to do otherwise would result in this Court rendering an advisory opinion from which no practical results can follow. *Whitney Nat. Bank of New Orleans v. Poydras Ctr. Assocs.*, 468 So. 2d 1246, 1248 (La. App. 4th Cir. 1985). "The jurisprudence of this Court is well settled that courts will not decide abstract, hypothetical or moot controversies, or render advisory opinions with respect to such controversies." *Cat's Meow, Inc. v. City of New Orleans Through Dep't of Fin.*, 98-0601, p. 8 (La. 10/20/98), 720 So. 2d 1186, 1193.

**DECREE**

For the foregoing reasons, the July 20, 2023 judgment of the district court, as amended on June 6, 2024, granting NOAC's exception of no right of action as to the Association's possessory action, granting NOAC's exception of no cause of action as to the Association's claims for declaratory judgment and injunctive relief, and dismissing the Association's Petition, is affirmed.

**AFFIRMED**